**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**DAMARIS SALGADO RIVERA, et al.,**

**Plaintiffs,**

**v.**

**EMPRESAS Y-NUINA,**                                          **CIVIL NO. 10-1574 (GAG)**
**INC./KIKUET,**

**Defendant.**

## OPINION AND ORDER

Plaintiff in this matter, Damaris Salgado Rivera ("Plaintiff") commenced this action against her employer Empresas Y-Nuina, Inc. ("Defendant"), alleging disability discrimination, failure to provide reasonable accommodation, and retaliation due to her opposition of unlawful employment practices. Plaintiff alleges that Defendant's actions in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*.; Law No. 115 of December 20, 1991 ("Law 115"), P.R. Laws. Ann. tit. 29, § 194(a); and Law No. 44 of July 2, 1985 ("Law 44"), P.R. Laws Ann. tit. 1, §§ 501, *et seq*. This matter is currently before the court on Defendant's motion for summary judgment (Docket No. 50). Plaintiff filed an opposition (Docket No. 61). With leave of the court, Defendant and Plaintiff both filed respective reply briefs (Docket Nos. 68 & 73). After reviewing the pleadings and pertinent law, the court **DENIES** the defendant's motion for summary judgment.

## I.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law." Iverson

Civil No. 10-1574 (GAG)

v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted).  The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.  The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences.  Id. at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.  Id.  Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

In disputes involving questions of motive or intent, the movant's burden is particularly rigorous.  Unsettled issues regarding motive and intent will often preclude summary judgment.  See Lipsett v. Univ. of P.R., 864 F.2d 881, 895 (1st Cir. 1988).  The court should deny summary judgment when the non-moving party "can point to specific facts detailed in affidavits and depositions –that is, names, dates, incidents, and supporting testimony– giving rise to an inference of discriminatory animus." Id.

**II.      Relevant Factual & Procedural Background**

Defendant is a company dedicated to the manufacture and production of food products, specifically turnovers.  Plaintiff began working with Defendant in 2004.  At that time, her duties consisted of producing turnovers.  Plaintiff's doctors informed Defendant that, due to her skin condition, Plaintiff could not work in a humid area and had to be assigned work that did not require her hands to get wet.  As a result of this request, Plaintiff was transferred to the position of operator

**Civil No. 10-1574 (GAG)**

1   in the Box Assembly Area.  Her main duty was to assemble the boxes, which are used by other areas
2   of the company.  Plaintiff has been working in this position on a part time basis since May 2007, and
3   currently works eight hour shifts three times per week.  Defendant requires the employees who work
4   in the Box Assembly Area to meet a daily quota of assembled boxes.  Employees are sanctioned for
5   failing to meet with this quota.  Such sanctions include admonishment, suspension, reduction of
6   work hours, and termination.

7       On April 3 and April 24, 2007, Plaintiff received verbal and written warnings regarding her
8   performance.  Plaintiff filed a discrimination charge with the Equal Employment Opportunity
9   Commission ("EEOC") and the Anti-Discrimination Unit ("ADU") on April 27, 2007, and provided
10  a copy of her charge to her supervisor, Enrique Mangual ("Mangual").  On April 30, 2007,
11  Defendant issued a letter to Plaintiff admonishing her for her lack of production and misconduct
12  towards co-workers and supervisors.  As a result of this admonishment, Plaintiff was suspended for
13  one week and placed on probation, which reduced her weekly hours from forty to twenty-four.

14      On May 3, 2007, Plaintiff gave her employer a medical certificate from Dr. Roberto Coira.
15  The letter stated that Plaintiff suffered from a "general anxiety disorder" and that her condition was
16  exacerbated by her assigned duties.  Dr. Coira recommended that Plaintiff be assigned to her
17  previous position because it caused her less anxiety than in her current position in the Box Assembly
18  Area.

19      On July 11, 2007, Mangual issued another disciplinary warning to Plaintiff regarding her
20  performance.  Plaintiff was placed on probation for another ninety days and was warned that further
21  disciplinary action could result in her dismissal.  On July 17, 2007, Plaintiff wrote a letter to her
22  employer requesting that she be reinstated to her previous position in the production area.  She
23  claimed that her disability made it impossible to comply with the productivity quota in the Box
24  Assembly Area.  She also requested an increase in her work hours and demanded that her
25  supervisors stop discriminating against her for filing a charge of discrimination with the EEOC.

26      On October 8, 2007, Plaintiff once again received a memo regarding her inability to meet the

27

28                                                    3

Civil No. 10-1574 (GAG)

1   necessary quota of boxes assembled.  Plaintiff also received disciplinary memos on March 31, June

2   4, and August 22, 2008 for various other reasons.  On November 30, 2009, Plaintiff arrived late to

3   work after attending a medical appointment.  Mangual ordered Plaintiff to leave the premises and

4   return the following Monday.  Plaintiff was suspended from work for two weeks without pay.

5       On October 12, 2007, Plaintiff had received a right to sue from the EEOC in response to her

6   May 8, 2007 charge, but took no legal action.[1]  Plaintiff filed a second charge of discrimination

7   before the EEOC on December 4, 2009.  Plaintiff alleges that, as a result of her administrative

8   charges and requests for accommodation, Defendant created a hostile work environment consisting

9   of harassing comments that threatened her dismissal and a reduction in her working hours.  Plaintiff

10  received a second right to sue letter and filed the instant complaint (Docket No. 1) on June 23, 2010.

11  Defendant moved to dismiss the complaint (Docket No. 8).  The court denied the motion to dismiss

12  on September 9, 2010, finding Plaintiff's allegations sufficient to state a claim.  Defendant filed a

13  motion for summary judgment (Docket No. 50) on April 12, 2011.  In her opposition (Docket No.

14  61), Plaintiff moved to voluntarily dismiss her disability discrimination claim, as well as her failure

15  to accommodate claim under the ADA and Law 44.  (See Docket No. 61 at 1.)  Therefore, when

16  considering the instant motion, the court only applied Defendant's arguments to Plaintiff's retaliation

17  claims stemming from her reasonable accommodation requests and administrative charges.

18  **III.   Legal Analysis**

19      **A.   Plaintiff's Evidentiary Submissions**

20      Defendant contends in its reply brief (Docket No. 68-1) that Plaintiff has filed a "sham

21  affidavit" for the sole purpose of creating issues of material fact in order to survive Defendant's

22  motion for summary judgment.  Defendant further contends that Plaintiff's sworn statement (Docket

23

24

25      [1] Plaintiff contends that she chose not to file a claim against her employer because Mangual
    and her supervisors Margarita Berrios and Cruz Delia told her that she was going to be reassigned
26  to her full-time work shift and the conditions of her employment would improve if she did not file
    a claim.  However, after the ninety days to sue had elapsed, the harassment started again.  (See
27  Docket No. 61-2 at 26.)

28                                            4

**Civil No. 10-1574 (GAG)**

No. 61-2) contains countless statements clearly contradicting those statements made by Plaintiff during her previous deposition (Docket Nos. 50-5 & 50-6).  Plaintiff has utilized said sworn statement primarily to support her Responses and Objections to Defendant's Statement of Uncontested Facts (Docket No. 61-1). In its reply brief, Defendants asks the court to disregard Plaintiff's sworn statement (Docket No. 61-2) because it contradicts her prior deposition testimony.

The First Circuit has followed the other circuits in developing its own form of the "sham affidavit" doctrine.  See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) (citing Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir. 1993); Trans-Orient Marine v. Star Trading & Marine, 925 F.2d 566, 572-73 (2d Cir. 1991); Davidson & Jones Dev. v. Elmore Dev., 921 F.2d 1343, 1352 (6th Cir. 1991)).  In deciding Colantuoni, the First Circuit held that "[w]hen an interested party has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." 44 F.3d at 4-5.  In explaining the manner in which such documents should be dealt with, the First Circuit declared that district courts are in a unique position to assess these "sham affidavits" and, therefore, are entitled to disregard portions of affidavits that include new information, whenever said information is contradictory to previous testimony and was clearly asked in previous questions.  See Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000).  The Hernandez-Loring court further emphasized that "in applying this rule, it is critical that there be no 'satisfactory explanation' since lapse of memory, new sources of information or other events can often explain a revision of testimony." Id. at 55 (considering portion of affidavit where the only inconsistency with previous testimony was specificity of language).

Therefore, in assessing whether or not to disregard statements attested to by Plaintiff in her sworn affidavit, the court must analyze whether these statements are unambiguously contradictory to Plaintiff's previous testimony.  In considering Plaintiff's evidence, the court conducted this review and notes its findings in its analysis.

Civil No. 10-1574 (GAG)

### B.    Plaintiff's Claims Under the ADA

The ADA prohibits discrimination against a qualified individual with a disability by reason of the individual's disability in all employment practices. 42 U.S.C §12112(a); Sutton v. United Air Lines, Inc., 527 U.S. 471, 475 (1999). The ADA also prohibits discrimination against an individual "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In assessing retaliation claims, the First Circuit has held that, under the ADA, a plaintiff need not have a successful disability claim to raise a successful ADA retaliation claim. See Freadman v. Metro. Prop. and Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007) (citing Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 1 (1st Cir. 1997)). Instead, a Plaintiff must demonstrate that: (1) she engaged in protected conduct under the ADA; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity. Freadman, 484 at 106. Courts regularly recognize adverse employment actions in the form of a dismissal or demotion. See Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (quoting Lapka v. Chertoff, 517 F.3d 974, 986 (7th Cir. 2008) (internal quotation marks removed)). Similarly, "an environment of hostility and harassment may also suffice if it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Valle-Arce v. Puerto Rico Ports Auth., - - - F.3d - - - , 2011 WL 2652449 at *6 (1st Cir. Jul. 8, 2011) (quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

Plaintiff alleges that she was subject to a hostile work environment in retaliation for her requests for reasonable accommodations as well as for filing two discrimination charges with the EEOC on April 27, 2007 and December 4, 2009.

As to the first element, Plaintiff provides ample evidence of protected activity under the ADA. Among these examples are: (1) her requests for time off in relation to treatment associated with her conditions; (2) her requests for a change of position and duties; and (3) the accommodation request from Plaintiff's treating physician. (See Docket No. 61-4.) Plaintiff has also demonstrated

Civil No. 10-1574 (GAG)

that she filed at least one timely charge of discrimination with the EEOC.[2]  Plaintiff supports her

allegations of retaliatory actions with deposition testimony, as well as her sworn statement.[3]

Through the use of this evidence, Plaintiff depicts a hostile working environment which included:

(1) harassing and discriminatory comments, made on a daily basis by Defendant's officers and

decision-makers, Mangual, Margarita Berrios, and Cruz Delia (see Docket No. 61-2 at ¶¶ 37, 39,

42); (2) threats of termination (see Docket No. 61-2 at ¶¶ 40, 41); (3) a reduction in her working

hours from forty (40) to twenty-four (24) per week (see Docket No. 61-2 at ¶¶ 4, 40); (4) threats of

suspension from employment and salary (see Docket No. 61-2 at ¶¶ 43, 45); and (5) changes in

position and employment duties that were more physically demanding than those handled before the

request was made.  (See Docket No. 61-2 at 36.)  The court finds that threatening to terminate an

individual's employment or negatively effect the status of their position is sufficient to "dissuade[]

a reasonable worker from making or supporting a charge of discrimination." Valle-Arce, - - - F.3d -

- - , 2011 WL 2652449 at *6; see Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 224 (1st

Cir. 2007) (recognizing that termination is a materially adverse action sufficient to dissuade a worker

from making a discrimination charge).  Therefore, Plaintiff has satisfied the first two elements of

---

[2] Defendant argues that any retaliation stemming from Plaintiff's 2007 charge would be time-barred, but does not contest the fact that Plaintiff satisfies the first element of her *prima facie* retaliation claim with the December 4, 2009 charge.

[3] In its reply brief, Defendant argues that the court should not consider the sworn statement as evidence as this proffer represents Plaintiff's efforts to create issues of fact through the use of a "sham affidavit."  (See Docket No. 68-1.)  However, the court disagrees with Defendant's characterization of the majority of these statements.  Plaintiff's sworn statement does not contain testimony that directly contradicts statements made by Plaintiff in her deposition.  Instead, these statements tend to expand upon answers which were given to certain questions during the deposition or relate to different periods and events.  As such, the "sham affidavit" doctrine does not apply under these circumstances.  See Hernandez-Loring, 233 F.3d at 55 (denying the application of the "sham affidavit" doctrine where there was not "real contradiction between deposition and affidavit.").  Therefore, the court considered the sworn statement as proper evidentiary support when addressing Defendant's motion for summary judgment.

**Civil No. 10-1574 (GAG)**

her ADA retaliation claim.

With regard to the third element of her retaliation claim, Plaintiff must provide evidentiary support for her allegations that these retaliatory actions were taken in response to the aforementioned protected activity.  Plaintiff once again uses her sworn statement to provide evidentiary support for the element of causation.  A number of the alleged comments made by Mangual, Berrios, and Delia Cruz threaten Plaintiff with dismissal, a reduction in hours, disciplinary actions, and suspension from employment in direct response to Plaintiff's decision to file an administrative charge and request accommodations.  (See Docket No. 61-2 at ¶¶ 36, 39, 40, 41, 42, 43).  Therefore, assuming that a jury were to find Plaintiff's testimony to be credible, she has provided sufficient evidentiary support for her allegations that Defendant's discriminatory behavior was in retaliation for her protected activity.

In response to these allegations, Defendant offers legitimate business reasons for its decisions to change Plaintiff's position and hours  –i.e. decreasing Plaintiff's working hours because of her inability to meet her work quotas (see Docket No. 50-5 at 23-24); threatening suspension and dismissal for excessive absences (see Docket Nos. 50-3 & 50-4); and changing Plaintiff's duties and position because of her asserted disabilities.  (See Docket No. 50-6 at 2, 10-11.)   However, even if the court were to assume that all of Defendant's proffered business reasons were legitimate, such a finding does not explain the discriminatory comments and threatening remarks,[4] constituting a

_____

[4] These comments include "constantly [telling Plaintiff] that [she] was going to be terminated due to the discrimination charges that [she] filed against the company" (see Docket No. 61-2 at ¶ 40); "constantly [telling Plaintiff] that due to the discrimination charge filed, [she] was going to continue working on a part time basis, since they did not want [her] in the company premises" (see Docket No. 61-2 at ¶ 40); "almost on a daily basis, since the filing of the discrimination charge on December 4, 2009, even as of today, constantly threaten[ing Plaintiff] by telling [her] that if [she] filed a complaint before a court, they were going to make [her] life miserable, so that [she] leave[s]" (see Docket No. 61-2 at ¶ 41); "constantly [telling her that she] was not discharged after the filing of the first discrimination charge, since [she] did not file a complaint, however, if [she] file[d] a complaint after the filing of the second charge, then [she] was going to be discharged." (See Docket No. 61-2 at ¶ 41); "constantly [telling her] that due to the discrimination charge filed, they were going to continue taking disciplinary actions against [her] and would suspend [her] from salary and

Civil No. 10-1574 (GAG)

hostile work environment, which Plaintiff alleges were directed towards her in retaliation for her accommodation requests and administrative charges. Accordingly, the court finds that a genuine issue of material fact exists as to the alleged hostile work environment that was created in response to Plaintiff's protected actions. Therefore, the court **DENIES** Defendant's motion for summary judgment (Docket No. 50) as to Plaintiff's retaliation claims under the ADA.

### C.      Law 115 Claim

Plaintiff also asserts a claim under Puerto Rico's retaliation statute, Law 115. Like the ADA, Law 115 protects employees who provide or attempt to provide testimony or information in an administrative, judicial or legislative forum. P.R. Laws Ann. tit. 29, § 194a(a). Claims under Law 115 are regularly analyzed in a similar fashion to ADA retaliation claims. See Quevedo-Gaitan v. Sears Roebuck de Puerto Rico, Inc., 536 F. Supp. 2d 158, 171 (D.P.R. 2008) (analyzing Law 115 coterminously with ADA retaliation claims); Torres-Oliveras v. Special Care Pharmacy Servs., 2011 WL 2199354 at * 8 (D.P.R. Jun. 6, 2011) (denying dismissal of Law 115 claim "under the same reasoning that was applied to plaintiff's retaliation claim under the ADA."). Accordingly, based on its assessment of Plaintiff's ADA retaliation claim, the court **DENIES** Defendant's motion for summary judgment as to Plaintiff's Law 115 claim.

### IV.      Conclusion

For the reasons set forth above, the court **DENIES** Defendant's motion for summary judgment (Docket No. 50). The court **GRANTS** Plaintiff's voluntary dismissal of its ADA disability and Law 44 claims. The only claims remaining before this court are Plaintiff's retaliation claims under the ADA and Law 115.

---

employment, in order for [her] to leave, since [she] was a troublemaker. (See Docket No. 61-2 at ¶ 43).

**Civil No. 10-1574 (GAG)**

**SO ORDERED.**

In San Juan, Puerto Rico this 8th day of August, 2011.


*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge

10